```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE


Ann M. Lessard and
Richard Lessard

     v.                              Civil No. 10-cv-302-JL
                                     Opinion No. 2011 DNH 128
EMC Insurance Companies
```

### MEMORANDUM ORDER

The question in this declaratory judgment action is whether plaintiff Ann Lessard's failure to submit to an examination under oath, known in the insurance industry as an "EUO," precludes her and her husband from suing their motor vehicle insurer, defendant EMC Insurance Companies, for denying coverage of injuries she sustained in a motorcycle accident. EMC has moved for summary judgment, see Fed. R. Civ. P. 56, arguing that the insurance "policy makes submission to a reasonable request for an EUO a condition precedent to filing suit." Krigsman v. Progressive N. Ins. Co., 151 N.H. 643, 648 (2005) (citation omitted). The Lessards accept that interpretation of the policy, but argue that trial is necessary to determine, among other things, whether EMC's request for an examination was reasonable. This court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity), because the Lessards are New Hampshire citizens, EMC

is an Iowa company, and the amount in controversy exceeds $75,000.

After hearing oral argument, this court denies the motion for summary judgment.  EMC did not request the examination under oath until two and a half years after the Lessards submitted their claim (and six and a half years after being notified of their accident).  While EMC has offered a plausible explanation for that delay, attributing it to difficulties in obtaining Ann's complete medical records, a rational factfinder would not be required to accept that explanation, or to deem such a long delay reasonable.  Because the reasonableness of EMC's request cannot be resolved as a matter of law (at least on the current record), this case must proceed to trial.

I. **Applicable legal standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  An issue is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if it could sway the outcome under applicable law. See, e.g., Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir.

2010) (citation omitted). In determining whether summary judgment is appropriate, the court must "view[] all facts and draw[] all reasonable inferences in the light most favorable to the nonmoving party." Id.

## II. Background

In July 2003, while riding together on a motorcycle in Madison, New Hampshire, Richard and Ann Lessard were struck from behind by another vehicle. Ann, the passenger, suffered serious injuries, requiring surgery to her spine and left wrist, and was diagnosed with post-traumatic stress disorder. She claims to have incurred medical expenses in excess of $150,000 as a result of the accident. The Lessards brought suit against the driver of the other vehicle, Lori Thomas, in New Hampshire Superior Court in June 2006. See Lessard v. Thomas, No. 06-078 (N.H. Super. Ct. June 30, 2006).

Thomas had a motor vehicle insurance policy from Allstate Insurance Company with an applicable coverage limit of $100,000. Because Ann's claimed medical expenses exceeded that limit, the Lessards notified their own motor vehicle insurer, EMC, of a claim for underinsured motorist ("UIM") benefits in May 2007 (having previously notified EMC of the accident just after it occurred). Their policy had an applicable UIM coverage limit of

$250,000.  With EMC's permission, the Lessards ultimately settled their case against Thomas in November 2008 for her $100,000 coverage limit.[1]

For purposes of evaluating the UIM claim, EMC requested in June 2007 that the Lessards provide written authorizations for access to their medical records.  The Lessards did so in January 2008 ("[a]t long last," their counsel's cover letter acknowledged), with the medical provider information left blank.  EMC responded that it needed the identities of Ann's medical providers.  In March 2008, the Lessards provided a "nearly complete summary" of Ann's medical bills, including the names and addresses of her providers, along with a specific authorization for one provider (psychologist Victoria Blodgett).  At EMC's request, they provided specific authorizations for about 17 more providers in March and August 2009.  Because Ann continued to seek treatment, they also provided updates on her medical bills in April 2008 and June 2009.

---

[1] The Lessards asked for EMC's permission to settle for the policy limit in April 2008.  EMC refused to grant permission until it received a copy of Thomas's policy declarations page (to confirm the limit) and a letter from Thomas's insurer offering to settle at that amount.  Thomas's insurer provided the offer letter in October 2008, and EMC received the declarations page in November 2008.  It approved the settlement the next day.

EMC advised the Lessards' counsel in November 2009 that it had obtained nearly all of Ann's medical records (except from Blodgett) and requested that Ann submit to an examination under oath, asking "how you would like to coordinate that examination." Receiving no reply, EMC requested by letter in December 2009 that the Lessards' counsel "provide dates that your client will be available for her examination."  Again receiving no reply, EMC notified the Lessards' counsel by certified letter dated January 20, 2010 (and received two days later) that the examination would be conducted on February 19, 2010 at a specified time and location in Manchester, New Hampshire.  The Lessards did not respond to that notice either, and Ann did not show up for the scheduled examination.

On March 23, 2010, still having heard nothing from the Lessards, EMC notified their counsel that it had decided to deny their claim for UIM coverage because of Ann's refusal to submit to the examination under oath.  The Lessards' insurance policy provided that EMC had "no duty to provide coverage under this policy unless there has been full compliance with the following duties," including that the insured must "[s]ubmit, as often as we reasonably require . . . [t]o examination under oath."  The policy further provided that "[n]o legal action may be brought against us until there has been full compliance with all the

terms of this policy."  The Lessards' counsel finally responded to EMC on April 20, 2010, with a letter "encourag[ing] EMC to re-evaluate its decision to deny coverage."  The letter explained that Ann was "in a uniquely fragile, highly emotional state" and, since being deposed in the Thomas lawsuit, had "been frightened to undergo further oral examination" because it would require her to "relive the trauma" of the accident and "other pre-collision problems."  She "took some time to think about your request," the letter said, "and consulted with her therapist once again about how to bring herself to undergo such an examination again," but was "unavailable to do so on the date and time which you unilaterally chose," and did not meet with her counsel to discuss the matter again until March 2010.  Nevertheless, the letter stated that Ann "remains willing to submit to an EUO at a mutually convenient time."

   EMC advised the Lessards' counsel in June 2010 that it needed more time to process the request for reconsideration of its coverage decision.  That same day, the Lessards filed suit against EMC in New Hampshire Superior Court, seeking a declaratory judgment that they "are entitled to insurance coverage in the full amount of the applicable policy limits" and "that the defenses raised by [EMC] do not justify a denial of coverage."  EMC removed the case to this court.  See 28 U.S.C. §

1441.  The Lessards then moved to remand, arguing that the removal was untimely, see id. §§ 1446, 1447, but this court denied the motion, see document no. 9, at 1, and discovery proceeded.  Near the end of discovery, EMC moved for summary judgment.  See Fed. R. Civ. P. 56.

### III.  Analysis

Both sides agree that New Hampshire law governs this case and that, under the New Hampshire Supreme Court's decision in Krigsman, the insurance policy that EMC issued to the Lessards "makes submission to a reasonable request for an EUO a condition precedent to filing suit," regardless of whether the insurer "has been prejudiced by the [insured's] refusal to submit to the EUO." 151 N.H. at 648-49 (citing Mello v. Hingham Mut. Fire Ins. Co., 656 N.E.2d 1247, 1250 (Mass. 1995)).  EMC argues that the Lessards, by not responding to its repeated requests to schedule Ann's examination, failed to fulfill that condition precedent and therefore cannot bring suit for coverage under the policy.  The Lessards argue, in response, that EMC's delay in requesting the examination made its request unreasonable.[2]  As explained below,

---

[2] EMC initially argued that the Lessards waived the unreasonableness argument by failing to assert it before their summary judgment objection.  But "a plaintiff generally is not required to negate an affirmative defense unless and until the

this court concludes that the reasonableness of EMC's request cannot be resolved as a matter of law (at least on the current record) and that trial is therefore necessary.

For an insurer's EUO request to be considered reasonable, it must be "timely." Miles v. Great N. Ins. Co., 634 F.3d 61, 66 (1st Cir. 2011). "Determining what is a reasonable time" for an insurer to wait "is usually a question of fact" that depends on "the nature of the [insurance] contract, the probable intention of the parties, and the attendant circumstances." Lorenzo-Martinez v. Safety Ins. Co., 790 N.E.2d 692, 696 (Mass. App. Ct. 2003) (cited in Krigsman). For example, in Lorenzo-Martinez, the court deemed a 9-month delay reasonable as to one insured, where the insurer made "repeated attempts" to obtain information through other means before resorting to the EUO. Id. But the court deemed a 13-month delay unreasonable as to another insured, where there was "nothing on the record that indicates that [the insurer] did anything to investigate the claim" during that period. Id. at 697; compare also David v. Hingham Mut. Fire Ins. Co., No. 07-10328, 2007 WL 4322792, at *3 (D. Mass. Dec. 7, 2007)

---

defendant has placed it in issue." Oakes v. United States, 400 F.3d 92, 98 (1st Cir. 2005); document no. 4, at 2 (asserting, as an affirmative defense, that the Lessards "failed to fulfill a condition precedent to the policy"). At oral argument, EMC withdrew its waiver argument.

(11-month delay reasonable where insurer made "repeated attempts" to obtain information through other means) with Knight v. CNA Ins. Co., 2003 Mass. App. Div. 198, 202 (Mass. Dist. Ct. 2003) (4-month delay unreasonable where "there is no suggestion as to why [the insurer] delayed").

    This case involved a much longer delay than any of those: EMC waited two and a half years after the Lessards submitted their claim (and six and a half years after being notified of their accident) before requesting an examination.  EMC argues that it was diligently seeking to obtain Ann's complete medical records during that period, and that the Lessards caused the delay by failing to provide the necessary authorizations and contact information for her medical providers.  But the Lessards provided blanket authorization forms and contact information to EMC more than a year and a half before the EUO request.  So it is not clear why the process took so long.  Moreover, it is not clear why EMC needed to obtain all (or nearly all) of Ann's records before proceeding with the examination, rather than simply examining her based on the records and information available earlier.  The insurance policy required the Lessards to submit to an EUO "as often as [EMC] reasonably require[s]," so

EMC could have requested another examination if warranted by records obtained later.[3]

EMC has not cited, nor has this court been able to find, any case where a delay of two and a half years in requesting an EUO was deemed reasonable as a matter of law. That is not to say that such a delay cannot be reasonable, depending on the "attendant circumstances." Lorenzo-Martinez, 790 N.E.2d at 697. "Reasonableness is a fairly low threshold" in this context. 1 New Appleman Insurance Law Practice Guide § 9.24[2][b], at 9-37 (2010). In this case, however, a rational factfinder viewing the record in the light most favorable to the Lessards could conclude that EMC's request was unreasonably late. Summary judgment is therefore inappropriate.[4]

---

[3]The Lessards also note that New Hampshire's insurance regulations require insurers to investigate claims and make coverage decisions on a much shorter timetable. See N.H. Code Admin. R. Ins. 1001.02 (requiring insurers "to commence an investigation . . . within 5 working days upon receipt of notice of loss" and to make a coverage decision "within 10 working days" after receiving a claim, or else to advise the insured by that date, and "every 30 days thereafter," that it "needs more time," providing "the reasons for the delay"). This court need not reach that issue, because the result here would be the same with or without the regulations.

[4]In light of that ruling, this court need not reach the Lessards' other argument against summary judgment, which is that Ann's failure to respond to EMC's request did not amount to an "unexcused refusal to submit to an examination," Krigsman, 151 N.H. at 648 (citing Lorenzo-Martinez, 790 N.E.2d at 695-96), because she had a valid excuse--i.e., she was suffering from

**IV.  Conclusion**

For the reasons set forth above, EMC's motion for summary judgment[5] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 17, 2011

cc:   John P. Kalled, Esq.
      Andrew Ranks, Esq.

---

post-traumatic stress disorder and needed more time to prepare with her psychologist--and because she eventually offered to reschedule the EUO on a later date.

[5]Document no. 10.